## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHELE CRECY AND QUANELUS CRECY, as Next Best Friend of D.C., a Minor Child, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 15 CV 1014 |
| v. | ) ) | (Removed from the Circuit Court of the |
| KANKAKEE KJHS DISTRICT #111 MARCUS GREEN, JOSE MARTINEZ AND THE CITY OF KANKAKEE, | ) ) ) ) | 21st Judicial Circuit, Kankakee County, Case No. 13 L 0153) |
| Defendants. | ) | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSE
### TO PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME the Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, by

and through one of their attorneys, JASON W. ROSE of HERVAS, CONDON & BERSANI,

P.C., and for their answer and affirmative defense to Plaintiffs' Second Amended Complaint,

states as follows:

1.  Plaintiff, D.C., is a minor child residing in Kankakee, Illinois.

**ANSWER:**  **Defendants admit that Plaintiff D.C. is a minor child, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 1 of Plaintiffs' Second Amended Complaint.**

2.  Plaintiffs, Michele Crecy and Quanelus Crecy, are the biological parents of the

Plaintiff, D.C., a Minor Child, and reside in Kankakee, Illinois.

**ANSWER:**  **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 2 of Plaintiffs' Second Amended Complaint.**

3.  Defendant, Kankakee KJHS  DISTRICT #111 (hereinafter referred to as

"DISTRICT I 11"), is a duly organized and existing KJHS DISTRICT formed under and by virtue of the laws of the State of Illinois, with its principal offices located at 240 Warren Avenue, Kankakee, Illinois.

**ANSWER:** **Defendants City of Kankakee and Jose Martinez admit the allegations contained in paragraph 3.**

4.    Defendant, MARCUS GREEN (hereinafter "GREEN"), was employed by DISTRICT 111, on November 14, 2011, as a Staff Member at Kankakee Junior High KJHS.

**ANSWER:** **Defendants City of Kankakee and Jose Martinez admit the allegations contained in paragraph 3.**

5.    Defendant, the CITY OF KANKAKEE, (hereinafter CITY) is a municipal corporation with its principal offices located at 304 S. Indiana, Kankakee, Illinois.

**ANSWER:** **Defendants admit the allegations contained in paragraph 5 of Plaintiffs' Second Amended Complaint.**

6.    Defendant, CITY OF KANKAKEE, is a municipality of the State of Illinois employing the use of a law enforcement police force possessing the authority to arrest citizens and/or restrict the liberty and restrain the citizens of the City of Kankakee. Defendant, CITY OF KANKAKEE also has the authority to initiate and maintain law enforcement activities in the City of Kankakee, including the arrest of citizens of the State of Illinois.

**ANSWER:** **Defendants admit the allegations contained in paragraph 6 of Plaintiffs' Second Amended Complaint.**

7.    Defendant, JOSE MARTINEZ (hereinafter OFFICER MARTINEZ), was employed by the City of Kankakee as a police officer, assigned to the Kankakee Junior High School (hereinafter "KJHS") on November 14, 2011.

**ANSWER:**   Defendants admit the allegations contained in paragraph 7 of Plaintiffs'
Second Amended Complaint.

8.       Defendant DISTRICT 111, by and through its agents, servants, or employees, who

were acting within the scope of their employment and agency, owned or otherwise operated,

managed, and maintained a KJHS located at 2250 East Crestwood Street, Kankakee, Illinois,

commonly known as Kankakee Junior High KJHS (hereinafter referred to as "KJHS").

**ANSWER:**   Defendants City of Kankakee and Jose Martinez admit the allegations
contained in paragraph 8.

9.       At all times material, it was the duty of Defendant DISTRICT 111, by and through

its agents, servants, or employees, who were acting within the scope of their employment and

agency, to follow all lawful policies of the DISTRICT, County and State of Illinois relating to the

education, care of children and the ensuring of the safety of children enrolled in the public

KJHSs of DISTRICT 111.

**ANSWER:**   Defendants City of Kankakee and Jose Martinez lack knowledge or
information sufficient to form a belief about the truth of the allegations
contained in paragraph 9.

10.       At all times material, it was the duty of Defendant DISTRICT 111, by and through

its agents, servants, or employees, who were acting within the scope of their employment and

agency, to provide security and/or adult/teacher supervision at the KJHS during KJHS hours so

as to keep proper conduct, and so as to avoid injury to students and other persona lawfully at the

KJHS, including, but not limited to D.C..

**ANSWER:**   Defendants City of Kankakee and Jose Martinez lack knowledge or
information sufficient to form a belief about the truth of the allegations
contained in paragraph 10.

11.       At all times material and relevant, D.C., was registered as a student at the KJHS.

3

**ANSWER:**   **Defendants admit the allegations contained in paragraph 11 of Plaintiffs' Second Amended Complaint.**

12.     Plaintiff, D.C. suffered from a medical condition to his throat prior to his enrollment at KJHS.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12 of Plaintiffs' Second Amended Complaint.**

13.     Plaintiff, D.C.'s medical condition to his throat allowed no pressure or trauma to be allowed on D.C.'s throat without the possibility of the immediate result of crushing his trachea.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 13 of Plaintiffs' Second Amended Complaint.**

14.     Plaintiff, D.C., suffered from bipolar disorder.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 of Plaintiffs' Second Amended Complaint.**

15.     DISTRICT 111 and/or the KJHS, by and through its agents, servants, or employees, who were acting within the scope of their employment and agency were aware that the individuals with Disabilities Education Act (IDEA) require that an Individual Educational Plan (hereinafter "IEP") be developed for students with disabilities who have been found eligible for special education services.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 15 of Plaintiffs' Second Amended Complaint.**

4

16.     Plaintiff, D.C. was a student with disabilities who was found eligible for special

educational services.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16 of Plaintiffs' Second Amended Complaint.**

17.     IDEA establishes that the (IEP) be written and must specify how education,

related services, and support will be delivered to a student with disabilities.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17 of Plaintiffs' Second Amended Complaint.**

18.     That prior to November 14, 2013, DISTRICT 111 and/or the KJHS drafted, or

was involved in the formulation or creation of an IEP for D.C.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18 of Plaintiffs' Second Amended Complaint.**

19.     That D.C.'s IEP was effective on November 14, 2011.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19 of Plaintiffs' Second Amended Complaint.**

20.     The purpose of the IEP for D.C. was to develop an educational program for him

that would support his progress in the general educational curriculum and meet his other

educational and functional needs resulting from D.C.'s disability.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20 of Plaintiffs' Second Amended Complaint.**

21.     When the IEP was created, DISTRICT 111 and/or the KJHS, by and through its

employees, agents, servants, or employees, who were acting within the scope of their

employment was aware of Plaintiff D.C.'s medical conditions to his throat and his bipolar

disorder as well as other disabilities from which D,C. suffered.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 of Plaintiffs' Second Amended Complaint.**

22.     Given D.C.'s medical conditions and disabilities, the KIIIS implemented a

Behavioral Intervention Plan (hereinafter "BIP") for D.C., in addition to D.C.'s IEP.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22 of Plaintiffs' Second Amended Complaint.**

23.     Defendant DISTRICT 111 and/or KJHS were aware of the details and
recommendations and/or requirements of Plaintiff D.C.'s BIP and IEP prior to November 14,
2011.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23 of Plaintiffs' Second Amended Complaint.**

24.     That D,C.'s BIP contained details and/or made recommendation regarding what

discipline may be enforced against D.C. and the manner of discipline enforced against D.C. in

the event any altercation with a student or staff member arose involving D.C.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 24 of Plaintiffs' Second Amended Complaint.**

25.     That Defendants, DISTRICT 111 and/or KJHS , by and through their agents,

servants, or employees, who were acting within the scope of their employment and agency, knew

that D.C.'s BIP recommended or required no more than two (2) staff members to intervene to

calm D.C. down in the event of an altercation involving D.C.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 25 of Plaintiffs' Second Amended Complaint.**

26. That Defendants, DISTRICT 111 and/or KJHS , by and through their agents, servants, or employees, who were acting within the scope of their employment and agency, knew that D.C.'s BIP recommended or required such intervention in an altercation with D.C. not to be physical in nature to maintain D.C.'s physical and emotional/psychological safety.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26 of Plaintiffs' Second Amended Complaint.**

27. That Defendants, DISTRICT 111 and/or IIS , by and through their agents, servants, or employees, who were acting within the scope of their employment and agency, knew prior to November 14, 2011 that the BIP and/or IEP recommended for staff intervention for any verbal altercations between D.C. and another student before the altercations became physical.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 27 of Plaintiffs' Second Amended Complaint.**

28. That Defendants, DISTRICT 111 and/or ICIHS , by and through their agents, servants, or employees, who were acting within the scope of their employment and agency, knew prior to November 14, 2011 that the BIP and/or IEP recommended for staff to allow D.C. an opportunity to tell his side of the story regarding any altercation without fear or judgment from the Staff.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 28 of Plaintiffs' Second Amended Complaint.**

29.     That Defendants, DISTRICT 111 and/or KRIS , by and through their agents, servants, or employees, who were acting within the scope of their employment and agency, knew prior to November 14, 2011 that the BIP and/or IEP recommended for staff from the K.11-1S and/or DISTRICT 111 to supervise D.C. at all times, and to have an employee/staff walk him to his classes before a passing period began, isolating D.C. from other students in the hallway when D.C. walked to his classes.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 29 of Plaintiffs' Second Amended Complaint.**

30.     That Defendants, DISTRICT 111 and/or KJHS , by and through their agents, servants, or employees, who were acting within the scope of their employment and agency, knew prior to November 14, 2011 that the RIP and/or IEP recommended for the 10HS and/or DISTRICT I 1 to supervise D.C. at all times, and assist in all activities in which other students were present with D.C.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 30 of Plaintiffs' Second Amended Complaint.**

31.     On November 14, 2011 Plaintiff, D.C. was a student in a KJHS classroom in which Susan King was a teacher.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 31 of Plaintiffs' Second Amended Complaint.**

32.     Paraprofessionals Brian Vaughn and Maria Salcedo were present in the classroom during the afternoon of November 14, 2011.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 32 of Plaintiffs' Second Amended Complaint.**

33.      That another student by the name of "Malcolm" was also a student in Susan

King's class with D.C.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33 of Plaintiffs' Second Amended Complaint.**

34.      On or about November 14, 2011, at approximately 1:30 p.m., D.C. and

"Malcolm," engaged in a verbal altercation while in a classroom at K.11-1S.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 34 of Plaintiffs' Second Amended Complaint.**

35.      That during the verbal altercation between. D.C. and Malcolm, D.C. did not

strike, hit or in any way make physical contact with Malcolm.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 35 of Plaintiffs' Second Amended Complaint.**

36.      That at the end of the verbal altercation between D.C. and Malcolm, Malcolm got

out of his seat and aggressively approached D.C. as if to fight D.C.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 36 of Plaintiffs' Second Amended Complaint.**

37.      Immediately prior to Malcolm approaching D. C . during the verbal altercation,

D.C. remained in his seat and did not approach Malcolm.

**ANSWER:**      **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 37 of Plaintiffs' Second Amended Complaint.**

38.   It was only after Malcolm aggressively approached D.C. as if to fight, that D.C.

got out of his seat and stood up.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38 of Plaintiffs' Second Amended Complaint.**

39.   That Malcolm instigated a potential physical altercation between himself and D.C.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 39 of Plaintiffs' Second Amended Complaint.**

40.   After Malcolm approached D.C., Maria Salcedo called the office for staff or

security assistance.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 40 of Plaintiffs' Second Amended Complaint.**

41.   Maria Salcedo and/or Brian Vaughn grabbed Malcolm and after holding him back

from fighting with D.C., they escorted Malcolm into the hallway outside of the classroom.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 41 of Plaintiffs' Second Amended Complaint.**

42.   Maria Salcedo then re-entered the classroom and both Maria Salcedo and Susan

King grabbed D.C. by his arms and held him to prevent him from following Malcolm.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 42 of Plaintiffs' Second Amended Complaint.**

43.   After Malcolm was taken out of the classroom, D.C., remained in the classroom

with Maria Salcedo and Susan King.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 43 of Plaintiffs' Second Amended Complaint.

44.   Either Maria Salcedo or Susan King blocked the classroom door to try and prevent D.C. from exiting the classroom.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 44 of Plaintiffs' Second Amended Complaint.

45.   After Malcolm exited the classroom, Defendant, MARCUS GREEN ("GREEN"), arrived at the classroom with hall monitor Donte Carr and City of Kankakee Police Officer JOSE MARTINEZ ("OFFICER MARTINEZ").

**ANSWER:**   Defendants admit that when Officer Martinez arrived at the classroom, Malcolm was outside the classroom and Carr and Green were also present.

46.   GREEN instructed Malcolm to go with OFFICER MARTINEZ to the school office to which Malcolm complied.

**ANSWER:**   Defendants admit the allegations contained in paragraph 46 of Plaintiffs' Second Amended Complaint.

47.   OFFICER MARTINEZ then escorted Malcolm to the school office.

**ANSWER:**   Defendants admit Officer Martinez began escorting Malcolm to the principal's office.

48.   After OFFICER MARTINEZ began to escort Malcolm to the office, GREEN directed that D.C. exit the classroom.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48 of Plaintiffs' Second Amended Complaint.

49.     When GREEN requested that D.C. exit the classroom, D.C. ran out of the

classroom passing Maria Salcedo.

**ANSWER:**     **Defendants admit that D.C. ran out of the classroom but lack knowledge of information about the truth of the remaining allegations contained in paragraph 49.**

50.     GREEN then reached out toward D.C. with a hooking motion of his arm, placed

his bent arm around D.C.'s neck and his neck area in a "choke hold," and, upon information and

belief, scratched D.C's chin with a walkie talkie GREEN held in his hand.

**ANSWER:**     **Defendants admit that Officer Martinez heard a disturbance or commotion behind him.  Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 50.**

51.     When GREEN placed D.C. in a choke hold, with his bent arm around D.C.'s neck,

at least Maria Salcedo and Susan King, yelled for GREEN to let go of D.C.'s neck and not to grab

D.C. around his neck or neck area.

**ANSWER:**     **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 51.**

52.     After being told to let go of D.C.'s neck, GREEN momentarily released D.C.'s

neck but when D.C. attempted to run away front GREEN, GREEN again grabbed D.C. in another

choke hold with his arm around D.C.'s neck.

**ANSWER:**     **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 52.**

53.     D.C. then attempted to break free from the "choke hold," and GREEN then body

slammed D.C. to the floor, with GREEN landing on top of D.C. while still holding him in a

"choke hold."

12

**ANSWER:**   **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 53.**

54.   When GREEN fell on top of D.C., D.C. hit the back of his head on the floor.

**ANSWER:**   **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 54.**

55.   At the time of the incident, GREEN was approximately 100 pounds heavier and approximately a foot taller than D.C.

**ANSWER:**   **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 55.**

56.   When GREEN grabbed D.C.'s neck and slammed him to the floor, Malcolm, nor any other student was in the hallway with D.C.

**ANSWER:**   **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 56.**

57.   While GREEN was still on top of D.C., Donte Carr grabbed one of D.C.'s arms and then GREEN grabbed the other arm and lifted D.C. off of the floor.

**ANSWER:**   **Defendants admit that D.C. was lifted off the floor by Green and Carr. Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 57.**

58.   That when GREEN restrained D.C., he did not use any immobilization techniques that he had learned from systematic training in the use of force on children within two (2) years prior to the incident with D.C. on November 14, 2011.

**ANSWER:**   **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 58.**

59.   At the time that GREEN and Donte Carr exerted force upon D.C., they had not received systematic staff training specifically educating staff members on Illinois restraint laws

and training in the safe and appropriate use of seclusion/restraint of children or training in the

dangers of seclusion/restraint, within the two years prior to the incident on November 14, 2011.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 59.**

60.    Neither GREEN nor Donte Carr possessed certification of the completion of, or

proof of proficiency of, staff training specifically regarding Illinois restraint laws and training in

the safe and appropriate use of seclusion/restraint of children or training in the dangers of

seclusion/restraint within the two years prior to the incident on November 14, 2011.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 60.**

61.    At the time that GREEN and Dante Carr exerted force upon D.C., neither used

specific, planned techniques of restraint on D.C. as identified in the Illinois School Code.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 61.**

62.    Donte Can, upon information and belief, had never received any formal training

by, or at the direction of, DISTRICT 111 in the restraint of students or the use of force against a

student.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 62.**

63.    On November 14, 2011, hall monitors were not allowed to use or exert any force

on students pursuant to KJHS or DISTRICT 111 policy.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 63.**

64.    After GREEN body slammed D,C landing his body on top of D.C.'s body, he

14

turned D.C. over on his stomach and attempted to put D.C.'s arms behind his back.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 64.**

65.     After GREEN placed D.C. in a choke hold and slammed him to the ground, D.C.,

sustained medical and emotional injuries, and received treatment for the same.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 65.**

66.     GREEN's exertion of force upon D.C. and grabbing D.C. around the neck and

slamming him to the ground and landing on top of D.C., violated the recommendations and/or

requirements of D.C.'s IEP or BIP.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 66.**

67.     After GREEN fell on top of D.C., GREEN and Donte Carr then lifted D.C. off of

the hallway floor and carried him, by his arms, down the hallway toward the school office.

**ANSWER:** **Defendants admit that Green and Carr lifted D.C. off the floor and tried to walk him down the hallway towards the principal's office.  Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 67.**

68.     When GREEN and Donte Carr were taking D.C. toward the office by his arms,

neither Malcolm, nor any other student, was in the hallway.

**ANSWER:** **Defendants lack knowledge or information about the truth of the remaining allegations contained in paragraph 68.**

69.     While D.C. was being forcibly taken down the hall by GREEN and Donte Carr,

OFFICER MARTINEZ advised GREEN and Carr that it would be easier to transport D.C. to the

office if he placed handcuffs on D.C.

**ANSWER:**   **Officer Martinez admits that he advised Green that it would be easier and safer to get D.C. to the office if D.C. was handcuffed.  Defendants lack knowledge or information about the remaining allegations contained in paragraph 69.**

70.     GREEN and Donte Carr then held D.C.'s hands behind his back to facilitate OFFICER MARTINEZ in placing the handcuffs on D.C.

**ANSWER:**   **Defendants admit that Officer Martinez handcuffed D.C.**

71.     After GREEN and Donte Carr held D.C.'s hands behind his back, OFFICER MARTINEZ placed handcuffs on D.C.

**ANSWER:**   **Defendants admit that Officer Martinez handcuffed D.C.**

72.     After GREEN and Donte Carr facilitated OFFICER MARTINEZ in placing handcuffs on D.C., D.C., sustained medical and emotional injuries, and received treatment for the same.

**ANSWER:**   **Defendants deny the allegations contained in paragraph 72 of Plaintiffs' Second Amended Complaint.**

73.     Neither GREEN, nor Dante Carr, nor any other KJHS, or DISTRICT 111 employee, servant or agent attempted to stop OFFICER MARTINEZ from placing handcuffs on D.C.

**ANSWER:**   **Defendants admit the allegations contained in paragraph 73 of Plaintiffs' Second Amended Complaint.**

74.     GREEN and Donte Carr's holding of D.C.'s arms to allow OFFICER MARTINEZ to handcuff D.C., and the handcuffing of D.C., violated the recommendations and/or requirements of D.C.'s IEP or BIP

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 74 of Plaintiffs' Second Amended Complaint.**

75.     When GREEN and Dante Carr held D.C.'s arms and facilitated OFFICER MARTINEZ in handcuffing D.C., D.C. had not struck any student, staff member, or teacher with his hands, fists or feet.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 75 of Plaintiffs' Second Amended Complaint.**

76.     When OFFICER MARTINEZ placed handcuffs on D.C., D.C. had not struck any student, staff member, or teacher with his hands, fists or feet.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 76 of Plaintiffs' Second Amended Complaint.**

77.     When GREEN and Donte Carr held D.C.'s arms and facilitated OFFICER MARTINEZ in handcuffing D.C., D.C. had not attempted to strike any student, staff member, or teacher with his hands, fists, or feet.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 77 of Plaintiffs' Second Amended Complaint.**

78.     When OFFICER MARTINEZ, placed handcuffs on D.C, D.C. had not attempted to strike any student, staff member, or teacher with his hands, fists, or feet.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 78 of Plaintiffs' Second Amended Complaint.**

79.     When GREEN and Donte Carr held D.C.'s arms and facilitated OFFICER MARTINEZ in handcuffing D.C., D.C. was not in any motion that was imminently indicative that he would strike any student, staff member, or teacher with his hands, fists, or feet.

17

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 79 of Plaintiffs' Second Amended Complaint.**

80.     When OFFICER MARTINEZ placed handcuffs on D.C, D.C. was not in any motion that was imminently indicative that he would strike any student, staff member, or teacher with his hands, fists, or feet.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 80 of Plaintiffs' Second Amended Complaint.**

81.     When GREEN and Donte Carr held D.C.'s arms and facilitated OFFICER MARTINEZ in handcuffing D.C., there were no other students or teachers in the hallway within 15 feet of D.C. if at all.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 81 of Plaintiffs' Second Amended Complaint.**

82.     When OFFICER MARTINEZ placed handcuffs on D.C, there were no other students or teachers in the hallway within 15 feet of D.C. if at all.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 82 of Plaintiffs' Second Amended Complaint.**

83.     When GREEN and Dante Carr held D.C.'s arms and facilitated OFFICER MARTINEZ in handcuffing D.C., D.C., there was no imminent threat of physical harm to any other student, staff member or teacher.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 83 of Plaintiffs' Second Amended Complaint.**

84.     When OFFICER MARTINEZ placed handcuffs on D.C, there was no imminent

threat of physical harm to any other student, staff member or teacher.

**ANSWER:** **Defendants deny the allegations contained in paragraph 84 of Plaintiffs' Second Amended Complaint.**

85. When GREEN and Donte Carr held D.C.'s arms and facilitated OFFICER

MARTINEZ in handcuffing D.C., D.C. was not an imminent danger to himself or other students,

staff members or faculty.

**ANSWER:** **Defendants deny the allegations contained in paragraph 85 of Plaintiffs' Second Amended Complaint.**

86. When OFFICER MARTINEZ handcuffed D.C., D.C. was not an imminent danger

to himself or other students, staff members or faculty.

**ANSWER:** **Defendants deny the allegations contained in paragraph 86 of Plaintiffs' Second Amended Complaint.**

87. OFFICER MARTINEZ did not place handcuffs on D.C. in order to preserve the

safety of students, faculty or staff at KJHS.

**ANSWER:** **Defendants deny the allegations contained in paragraph 87 of Plaintiffs' Second Amended Complaint.**

88. When OFFICER MARTINEZ brought D.C. into the school office, D.C. was not

acting in a manner that indicated that he was an imminent danger to himself or other students,

staff members or faculty.

**ANSWER:** **Defendants deny the allegations contained in paragraph 88 of Plaintiffs' Second Amended Complaint.**

89. After getting D.C. to the office, OFFICER MARTINEZ did not immediately

remove the handcuffs from D.C.

**ANSWER:** **Defendants admit the allegations contained in paragraph 89 of Plaintiffs' Second Amended Complaint.**

90.    Rather than immediately remove the handcuffs from D.C. after arriving at the office, OFFICER MARTINEZ told D.C. to stop moving around and struggling to slip his hands out of the handcuffs or the handcuffs would tighten.

**ANSWER:    Defendants admit the allegations contained in paragraph 90 of Plaintiffs' Second Amended Complaint.**

91.    When OFFICER MARTINEZ placed the handcuffs on D.C's wrists, the handcuffs tightened on D.C.'s wrists before OFFICER MARTINEZ removed them.

**ANSWER:    Defendants deny the allegations contained in paragraph 91 of Plaintiffs' Second Amended Complaint.**

92.    When OFFICER MARTINEZ placed the handcuffs on D.C., there was no space to place a finger between D.C.'s wrists and the handcuffs.

**ANSWER:    Defendants deny the allegations contained in paragraph 92 of Plaintiffs' Second Amended Complaint.**

93.    That D.C. remained in the handcuffs for several minutes until OFFICER MARTINEZ finally removed them several minutes later in the KJHS guidance office.

**ANSWER:    Defendants admit the allegations contained in paragraph 93 of Plaintiffs' Second Amended Complaint.**

94.    That during the entire time that D.C. was handcuffed, D.C. did not in any way pose an immediate danger to the safety of any student, staff member or teacher of KRIS.

**ANSWER:    Defendants deny the allegations contained in paragraph 94 of Plaintiffs' Second Amended Complaint.**

95.    That prior to the November 14, 2011 incident with D.C., neither GREEN, nor Donte Carr, nor OFFICER MARTINEZ had any personal knowledge of D.C.'s background, medical history or school records history.

**ANSWER:**     **Defendants admit that prior to November 14, 2011, they had no personal knowledge of D.C.'s background, medical history or school records history. Defendants lack knowledge or information to form a belief about the truth of the allegations contained in paragraph 95 of Plaintiffs' Second Amended Complaint.**

96.     That prior to the November 14, 2011 incident with D.C., neither GREEN, nor Donte Carr, nor OFFICER MARTINEZ had any personal interactions with D.C.

**ANSWER:**     **Defendants admit that prior to November 14, 2011, Officer Martinez had no personal interactions with D.C.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 96 of Plaintiffs' Second Amended Complaint.**

97.     When D.C. was brought into the office to give his side of the story, he was not given the full opportunity to tell the principal what happened and was not allowed to tell the Principal that he had been handcuffed.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 97 of Plaintiffs' Second Amended Complaint.**

98.     When the DISTRICT 111, and/or KJHS failed to allow D.C. to tell what happened, it did not comply with the recommendation and/or requirements of D.C.'s BIP/IEP.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 98 of Plaintiffs' Second Amended Complaint.**

99.     When the Principal met with D.C. and KJHS staff immediately after the incident, he was not informed by staff that D.C. had been handcuffed.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 99 of Plaintiffs' Second Amended Complaint.**

100.     After being taken to the KJHS guidance office, D.C. was released to go home on the KJHS school bus, but D.C. was not escorted to the bus by DISTRICT 111 and/or KJHS staff.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 100 of Plaintiffs' Second Amended Complaint.**

101.   DISTRICT 111 did not comply with the recommendations and/or requirements or

D.C.'s BIP/IEP when it failed to have a staff member escort him to the bus after D.C. was

grabbed around the neck, slammed to the floor by GREEN and handcuffed by OFFICER

MARTINEZ.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 101 of Plaintiffs' Second Amended Complaint.**

102.   On November 14, 2011, neither DISTRICT 111 nor KJHS initiated notice to

D.C.'s parents or the authorities of the altercation D.C. had in school with Malcolm nor that D.C.

had been restrained and/or handcuffed.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 102 of Plaintiffs' Second Amended Complaint.**

103.   Within 24 hours of GREEN's use of force on D.C. and OFFICER MARTINEZ'

handcuffing of D.C., DISTRICT 1111, nor KJHS provided written notification of the nature and

type of force and restraint used on D.C., including the fact that mechanical restraints (handcuffs)

were used against D.C.

**ANSWER:**   **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 103 of Plaintiffs' Second Amended Complaint.**

104.   Within 48 hour of GREEN's use of force on D.C. and OFFICER MARTINEZ'

handcuffing of D.C., DISTRICT 111, nor KJHS provided to D.C.'s parents a more detailed

supplemental written notification of the nature and type of force. and restraint used on D.C.,

including the fact that mechanical restraints (handcuffs) were used against D.C.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 104 of Plaintiffs' Second Amended Complaint**.

105.   Neither DISTRICT 111, nor KJHS, placed an incident report in D.C.'s school file after the use of restraint and handcuffs on D.C. detailing the events of November 14, 2011.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 105 of Plaintiffs' Second Amended Complaint**.

106.   DISTRICT 111 and KJHS, by and through its employees, servants, did not comply with the recommendations and/or requirements of D.C.'s BIP/IEP when it allowed physical restraint to be used against D.C., including the use of handcuffs.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 106 of Plaintiffs' Second Amended Complaint**.

107.   As a result of the altercation and violation of the BIP/IEP, Plaintiff, D.C., sustained medical and emotional injuries, and received treatment for the same.

**ANSWER:** **Defendants deny the allegations contained in paragraph 107 of Plaintiffs' Second Amended Complaint.**

108.   After the November 14, 2011 incident, D.C. withdrew from school and was homeschooled for his eighth grade year, and was not able to graduate in a formal school ceremony with the rest of his eighth grade peers.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 108 of Plaintiffs' Second Amended Complaint**.

109.   When D.C. attempted to re-enroll in public school for high school in DISTRICT

111, DISTRICT 111 failed to facilitate D.C.s enrollment and/or registration in his local high

school despite knowing of D.C.s previous disabilities.

**ANSWER:**     **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 109 of Plaintiffs' Second Amended Complaint.**

## COUNT I:
## 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION
## (DIRECTED AGAINST MARCUS GREEN)

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count I, as Count I is directed towards other named Defendants.

## COUNT II:
## U.S.C. § 1983 CIVIL RIGHTS VIOLATION
## (DIRECTED AGAINST DISTRICT 111)

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count II, as Count II is directed towards other named Defendants.

## COUNT III:
## 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION
## (DIRECTED AGAINST JOSE MARTINEZ)

1-109.   Plaintiffs re-allege, restate, and incorporate paragraphs 1-109 of this Complaint as

if fully set forth herein.

**ANSWER:**     **Plaintiffs incorporates and realleges paragraphs 1 through 109 as though fully set forth herein.  Therefore, Defendants incorporates and realleges its answers to paragraphs 1 through 109 as their answers to paragraph 1 through 109 of Count III of Plaintiffs' complaint.**

110.   Plaintiff, D.C. has a liberty interest in his own physical safety.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 110 of Plaintiffs' Second Amended Complaint.**

24

111.   OFFICER MARTINEZ's action of placing handcuffs on D.C. without legal justification and without proper cause were in reckless disregard for Plaintiff D.C.'s physical and psychological safety.

**ANSWER:   Defendants deny the allegations contained in paragraph 111 of Plaintiffs' Second Amended Complaint.**

112.   OFFICER MARTINEZ's action of placing handcuffs on D.C. without legal justification and without proper cause and when D.C. did not pose an immediate danger to the physical safety of other students, faculty or KJHS staff, violated D.C.'s civil right to enjoy his liberty and physical safety without restraint.

**ANSWER:   Defendants deny the allegations contained in paragraph 112 of Plaintiffs' Second Amended Complaint.**

113.   OFFICER MARTINEZ's action of leaving handcuffs on D.C. after arriving at the school office and allowing the handcuffs to tighten around D.C.'s wrists, when D.C. did not pose an immediate danger to the physical safety of other students, faculty or KJHS staff, violated D.C.'s civil right to enjoy his liberty and physical safety without restraint.

**ANSWER:   Defendants deny the allegations contained in paragraph 113 of Plaintiffs' Second Amended Complaint.**

114.   That each act set forth above was done by OFFICER MARTINEZ, a police officer of the CITY OF KANKAKEE, under color and pretense of the statutes, ordinances, regulations, customs and usages of the State of Illinois, County of Kankakee, City of Kankakee.

**ANSWER:   Defendants deny the allegations contained in paragraph 114 of Plaintiffs' Second Amended Complaint.**

115.   OFFICER MARTINEZ's actions violated Plaintiff D.C.'s substantive due process liberty interests to his own physical and psychological safety under the 14th Amendment of the U.S. Constitution.

**ANSWER:   Defendants deny the allegations contained in paragraph 115 of Plaintiffs' Second Amended Complaint.**

116.   The actions and failures to act set forth above of OFFICER MARTINEZ, violated the rights of Plaintiff D.C. under 42 U.S.C. § 1983 and the U.S. Constitution.

**ANSWER:   Defendants deny the allegations contained in paragraph 116 of Plaintiffs' Second Amended Complaint.**

117.   As a direct and proximate result of one or more of the aforesaid acts and omissions of OFFICER MARTINEZ, D.C. suffered serious physical and psychological injury, pain, loss of educational opportunities, and mental anguish.

**ANSWER:   Defendants deny the allegations contained in paragraph 117 of Plaintiffs' Second Amended Complaint.**

WHEREFORE, Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, deny that the Plaintiffs are entitled to any judgment whatsoever against it, and prays this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

**COUNT IV:**
**42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION**
**(DIRECTED AGAINST THE CITY OF KANKAKEE)**

1-109.   Plaintiffs re-allege, restate, and incorporate paragraphs 1-109 of this Complaint as if fully set forth herein.

**ANSWER:   Plaintiffs incorporates and realleges paragraphs 1 through 109 as though fully set forth herein.   Therefore, Defendants incorporates and realleges its answers to paragraphs 1 through 109 as their answers to paragraph 1 through 109 of Count IV of Plaintiffs' complaint.**

110.     Plaintiff D.C. has a liberty interest in his own physical safety.

**ANSWER:**      **Defendants admit generally that a person has a liberty interest in physical safety but deny that this interest is absolute.**

111.     The conduct of the agents, servants, or employees of the CITY OF KANKAKEE, acting within the scope of their employment and agency, violated Plaintiff D.C.'s substantive due process liberty interests under the 14th Amendment of the U.S. Constitution.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 111 of Plaintiffs' Second Amended Complaint.**

112.     That each act set forth above was done by OFFICER MARTINEZ, a police officer of the CITY OF KANKAKEE, under color and pretense of the statutes, ordinances, regulations, customs and usages of the State of Illinois, County of Kankakee, City of Kankakee.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 112 of Plaintiffs' Second Amended Complaint.**

113.     That the actions set forth above violated the Plaintiff's Fourth (4th), Fifth (5th), and Fourteenth (14th) Amendments to the Constitution of the United States of America and this action arises under 42 USC 1983.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 113 of Plaintiffs' Second Amended Complaint.**

114.     That as a direct and proximate result of the acts set forth herein, D.C. suffered severe physical and psychological injury, and emotional distress and humiliation.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 114 of Plaintiffs' Second Amended Complaint.**

WHEREFORE, Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, deny that the Plaintiffs are entitled to any judgment whatsoever against it, and prays this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT V
## STATE CLAIM — WILFUL AND WANTON CONDUCT
## <u>(DIRECTED AGAINST DISTRICT III)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count V, as Count V is directed towards other named Defendants.

## COUNT VI:
## STATE CLAIM-WILLFUL AND WANTON CONDUCT
## <u>(DIRECTED AGAINST MARCUS GREEN)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count VI, as Count VI is directed towards other named Defendants.

## COUNT VII:
## STATE CLAIM — 745 ILCS 10/9-102 CLAIM
## <u>(DIRECTED AGAINST DISTRICT 111)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count VII, as Count VII is directed towards other named Defendants.

## COUNT VIII:
## STATE CLAIM —NEGLIGENT HIRING
## <u>(DIRECTED AGAINST DISTRICT 111)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count VIII, as Count VIII is directed towards other named Defendants.

## COUNT IX:
## STATE CLAIM— NEGLIGENT SUPERVISION/ TRAINING
## <u>(DIRECTED AGAINST DISTRICT 111)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count IX, as Count IX is directed towards other named Defendants.

## COUNT X:
## VIOLATION OF ILLINOIS SCHOOL CODE
## <u>(DIRECTED AGAINST MARCUS GREEN)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count X, as Count X is directed towards other named Defendants.

## COUNT XI:
## VIOLATION OF ILLINOIS SCHOOL CODE
## <u>(DIRECTED AGAINST DISTRICT #111)</u>

Defendants, THE CITY OF KANKAKEE and JOSE MARTINEZ, make no response to

Count XI, as Count XI is directed towards other named Defendants.


**s/Michael D. Bersani**
MICHAEL D. BERSANI Bar No. 06200897
JASON W. ROSE, Bar No. 06208130
Attorney for Defendants County of Kankakee and
    Jose Martinez
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156   P: 630-773-4774
mbersani@hcbattorneys.com
jrose@hcbattorneys.com

29

## **FIRST AFFIRMATIVE DEFENSE**

NOW COME Defendant, JOSE MARTINEZ, by and through one of his attorneys,

JASON W. ROSE of HERVAS, CONDON & BERSANI, P.C., and, for his First Affirmative

Defense to Plaintiffs' Second Amended Complaint, states as follows:

Defendant did not violate any clearly established constitutional rights of which a

reasonable person would have known, thus entitling them to qualified immunity.

WHEREFORE, Defendant denies that the Plaintiffs are entitled to any judgment

whatsoever against them and pray that this Honorable Court enters a judgment in his favor and

allows for the costs of defending this lawsuit.

**s/Michael D. Bersani**
MICHAEL D. BERSANI Bar No. 06200897
JASON W. ROSE, Bar No. 06208130
Attorney for Defendants County of Kankakee and
   Jose Martinez
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156   P: 630-773-4774
mbersani@hcbattorneys.com
jrose@hcbattorneys.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| MICHELE CRECY AND QUANELUS CRECY, as Next Best Friend of D.C., a Minor Child, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 cv 1014 |
| v. | ) | |
| | ) | (Removed from the Circuit Court of the |
| KANKAKEE KJHS DISTRICT #111 | ) | 21st Judicial Circuit, Kankakee County, |
| MARCUS GREEN, JOSE MARTINEZ | ) | Case No. 13 L 0153) |
| AND THE CITY OF KANKAKEE, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2015, I electronically filed the foregoing **Answer and Affirmative Defense to Plaintiffs' Second Amended Complaint** with the Clerk of the U.S. District Court of Central District of Illinois, using the CM/ECF system, which will send notification to the CM/ECF participants:

**TO:**   Rodrick F. Wimberly, LEE & FAIRMAN, LLP, 18300 Dixie Highway, Homewood, IL 60430;
Kamilah Parker, MEACHAM, STARCK, BOYLE & TRAFMAN,  25 W. Washington, Suite 1400, Chicago, IL 60606.

> **s/Michael D. Bersani**
> MICHAEL D. BERSANI Bar No. 06200897
> JASON W. ROSE, Bar No. 06208130
> *Attorney for the Defendants* City of Kankakee and
> Jose Martinez
> HERVAS, CONDON & BERSANI, P.C.
> 333 Pierce Road, Suite 195
> Itasca, IL 60143-3156
> Phone:  630-773-4774
> Fax:  630-773-4851
> Jrose@hcbattorneys.com
> mbersani@hcbattorneys.com